Mr. Frenzy. Good morning, Your Honors, and may it please the Court. This case should have never been heard in a federal court in the United States, and this court should dismiss for lack of subject matter jurisdiction. First, Peacock v. Thomas precludes plaintiff's efforts to saddle freight- Haven't we already decided that issue in the previous appeal? In the interlocutory appeal, Your Honor? No, no, you did, the Court did not decide that issue. Well, I thought the whole point of our ruling was that the District Court had subject matter jurisdiction to adjudicate the matter before it, because there was a writ of attachment issued in favor of FLAME under Supplemental Rule B. Well, the Court did address one component of subject matter jurisdiction in the interlocutory appeal, which was a narrow issue of whether forward freight agreements underlying FLAME's judgment sounded inadulty such that they could be enforced in U.S. courts under 1333, but 1333 has other jurisdictional components. A case can sound inadulty and still be dismissed under Peacock, as in the Fifth Circuit Bowdoin Shrimp case. A case can sound inadulty and be dismissed under the Lauritzen principle, as reflected in this Court's en banc decision in Dracos. Well, I thought we had decided there was admiralty jurisdiction here. We're not dealing with federal question jurisdiction. Well, the Court did say that there would be that a forward freight agreement does sound inadulty such that a judgment could be enforced, but it begs the question, enforced against who? And, you know, that's the core problem, Peacock. If we've determined we have admiralty jurisdiction and we're proceeding in admiralty, we're not proceeding under a federal question jurisdiction, what difference does it make? Well, you know, the Supreme Court repeatedly has held that, you know, unaddressed jurisdictional defects have zero precedential value, and it just was not addressed in the interlocutory appeal. And the mandate rule or law of the case principles, likewise, they do not govern if the issue wasn't addressed. And nowhere in the decision... You can raise your arguments, but it seems like to me that your whole Peacock argument and the one preceding that confused federal question... an issue of federal question subject matter jurisdiction with admiralty subject matter jurisdiction. Respectfully, Your Honor, no. The Peacock stands for the general proposition that a federal court can enforce a judgment against a party named in the judgment, but that jurisdiction doesn't extend to non-parties to shift liability to non-parties. That was a federal question jurisdiction case. Yes, but Peacock has been applied judgment neutral to all types of cases, including cases where the judgment was entered in admiralty jurisdiction. They're asking you to split from the 11th and 5th circuits. I thought the Supreme Court decided in Penhall over 200 years ago that you could enforce the judgments of... It was an obligation of the federal courts to enforce foreign admiralty judgments and their derivatives, and that the Swift case, 60 or 70 years ago, dealt with many of the same issues that have come up in this case in admiralty jurisdiction, dealing with ancillary parties. But in Penhallow, in all of the cases involving the enforcement of a foreign admiralty judgment, that principle derived in the context of forcing the judgment against the party named in the judgment, and it's directly parallel to Peacock. In Penhallow and all of the other cases, and the only thing plaintiffs cite to involves situations where we're talking about this general principle that applies to admiralty judgments or any kind of foreign judgments. U.S. courts will adopt them. And in Peacock, the argument there was, well, a federal court has general jurisdiction to enforce a judgment against the party, so that should extend to non-parties. And the court in Peacock expressly rejected that. And they're asking you to adopt the very logic that the Supreme Court in Peacock reversed. Can I just ask how sort of that would... Wouldn't that kind of hollow out, though, our admiralty jurisdiction to do these attachments of... So, I mean, under your theory, all anyone with a vessel would have to do to avoid will be attachment is just put the assets in someone else's name, and then, boom, there's nothing a federal court can do about that. No, Your Honor. There would still be remedies. And that's where this case gets confusing because in the ordinary situation, rule B, a piece of property, a ship, or some other property that moves around can be attached and held. And a component of rule B says you have to say, I have a prima facie valid case in admiralty. It doesn't have to be finalized. And often, they go to a foreign jurisdiction, have an arbitration or some kind of proceeding where they litigate it there, come back with a judgment. And so what, you know, that could have happened here, and it would have made a lot more sense to have a foreign alleged fraudulent conveyance and foreign governance. What if they had come back with it, saying, okay, good, now I have my judgment against whichever the leader's name is, Freight Bulk. And then by the time they got back, this guy had just put the assets in a new company, Freight Bulk 2. So they have to go back and start again? Well, I mean, that was... It just seems like this is going to be incredibly impractical and it's going to end up hollowing out the whole point of this attachment proceeding. Respectfully, no. It is no more practical to require a U.S. court to litigate far-flung fraudulent conveyance and... No, what we're requiring a U.S. court to do is to resolve the whole case in one forum and in one piece. I mean, to start splitting things off and say, well, you have a jurisdiction to do the attachment, but you don't have jurisdiction to enforce, actually enforce the foreign judgment, and we don't know exactly where jurisdiction would obtain over that. You know, so we're going to have little bits and pieces of fragments of this case floating around in different parts of the world. Where I come from, one court resolves one case in controversy. Well, exactly. And one court could have resolved one case in controversy here, which was the London court, where they brought their proceeding against ICI, which had jurisdiction over ICI, the party named in the judgment. They could have, if English law or U.K. law permitted alter-ego liability, that would have been the time to do it. But what their rule would mean is that a party can target a defunct company that they know won't defend itself and go get a default judgment in a month's time for $66 million at stake here and then lie in wait for six years. And anybody within the hemisphere of that company that could somehow, if they become a deep pocket, they somehow become a target, it would have been much more efficient to raise alter-ego in the London court in the first instance. And Rule B provides that avenue. You can attach the property and you can, go to the foreign jurisdiction. And to address Judge Harris's point about, okay, well, what if the next day they then shift freight bulk to freight bulk two? And U.S. courts could, under Peacock, have an avenue for that type of situation where there's a close connection and if all you're doing is seeking a fraudulent conveyance to claw back a conveyance. And that's what the Straub case. That was what they claimed in Peacock. Well, in Peacock, the party did allege a fraudulent conveyance, but there's a difference. The Peacock drew a sharp distinction between when you're trying to impose liability on the full judgment. Right, but it seems like the hypothetical you were given the court was Peacock, which doesn't seem to help you very much. If that was the perception, that was not my intention. My point being is that there is an avenue under Peacock. And the Straub case in the 11th Circuit is a good roadmap to that. And it would provide guidance to lower courts, which is, if all you're doing is seeking a pure fraudulent conveyance to a vessel was quickly shifted to another company and you're gonna call that back, a U.S. court, if it's close in time and it's right involved, then it's one thing. But here, you know- If it's a quick fraud, it'd be okay. If it's a more well-planned, thought-out fraud that occurs over time, it wouldn't work. It's, you know, Your Honor, in Peacock, the plaintiff made those precise arguments and the Supreme Court said that if the party's named in a judgment and you're trying to shift liability to a non-party, that's a far different thing than if there is a, you know, if you would be just trying to enforce the judgment against the party to get a claw back. And so, and Peacock makes good sense in this context because it would provide a bright-line jurisdictional rule. Right now, you know, you have to assert a prima facie case and have district courts going through a complex, you know, analysis of trying to determine whether there's this very high burden to assert alter ego, and they could know off the bat, if you wanna assert a judgment against the party to the judgment, but you keep that, but this feeds into your theory that these are different parties. And, you know, that these are different entities and everything, and I realize that's the way you would like to have it, that these are all different entities, but the whole point of the case was that ICI and Vista and Freightbulk are just engaged in an elaborate shell game in order to evade creditors. And so, this distinction sometimes between enforcement against parties and enforcement against non-parties and this and that, doesn't that just play your game? No, because, you know, ICI, it was a, you know, far different company than Freightbulk. Freightbulk didn't exist until four years later. ICI was a company with, you know, some hundred employees, offices in multiple countries, and it went under in the shipping thing, and people in different departments went to their own companies. I know, but it's here when hard times before fell on ICI and engaged in what the district found, and I think quite correctly, I know you dispute that, but the evidence of a fraudulent conveyance to Vista and Baranski is absolutely overwhelming. I say, I see this in practical terms, and that is, this is an international economy, and there are gonna be some times when a foreign maritime judgment is enforced under admiralty law in the place where the attached vessel is moored, and that's what happened here. I don't think that there's any breach of comedy between the United States and Britain where the foreign maritime judgment was rendered because of Judge Dumas and the American court was doing its best to carry out and effectuate the British judgment. It's not as if we're trying to undermine British law or undermine the British judgment or cut the legs out from under the British judgment. No, it's an enforcement action. Well, the British judgment was against a different party, and respectfully, what their rule would mean is by attaching a piece of- What different party? ICI, the party named in the judgment, and it wasn't against Freightbulk or Vista or anyone else. But they're one in the same. Well, that's what the U.S. court was- There's a mountain of evidence. Respectfully, there is- That's the whole, that's the essence of the fraud. Having a U.S. court make that determination, which is what they were asking the court to do, involves all, you know, it could offend foreign, there is some implications. It's not just about the U.K. judgment. You're taking Ukrainian-based companies that operate under wholly different systems, completely, you know, strangers, and then having a U.S. court that has no subpoena power, no jurisdiction to get to the real bottom of the case, no jurisdiction to get third parties to produce records so you could actually get to the truth instead of having to rely on sanctions. Can you just, and all of this, in your view, was not implicitly already decided or impliedly decided on the interlocutory appeal? It just seems like all of this was clear already when the court heard this case the first time. It was not decided. The issue on the interlocutory appeal was a very narrow- I understand that the argument, the argument presented was narrow, but didn't the holding of the court impliedly encompass all of this? If it impliedly encompassed that there, you know, if the court would have held straightforward agreements- There is subject matter jurisdiction. If the court would have held that the straightforward agreements do not sound inadmissible, that would have prevented enforcement against anyone. So there was no reason against the party name, the judgment, or any alleged alter egos. So it was an unaddressed issue, and Peacock is not mentioned, and if this court was going to split- What language do you point to to follow up on my colleague's question? What language do you point to that would indicate the prior opinion was purely concerned with a fragment of the case? The holding of the court was that it had subject matter jurisdiction over this action, and that's the way Judge Dumas interpreted it. And, you know, I can't blame him after reading the opinion that that's what he believed. I'm out of time. May I respond? Yes. It's the absence of language about Peacock, or there are separate jurisdictional principles. Just as standing has a requirement of injury, redressability, and traceability, an interlocutory appeal that says there's no injury doesn't mean that the other two components have been satisfied. And, you know, and if this court had intended to address Peacock or Lauritsen, it surely would have said so, particularly if it was going to split with the 11th Circuit and 5th Circuit. It may have been because it wasn't necessary to address either one of those. And I think the court's, you know, two of the three members of the panel that decided that are sitting here, and I think that the court's use and the opinion of the references to the second cert's decision, the amico, are pretty telling. The amico addressed, again, a narrow issue about whether the agreements there sounded in admiralty. This was not an issue that was resolved. Right, but it was very specific on differentiating between federal question jurisdiction and admiralty jurisdiction. In the context of not an alter ego case. The alter egos in the amico raised Peacock as a defense, and they moved for dismissal for lack of subject matter jurisdiction. Now, the case was dismissed before it was passed on. The amico involved the issue of whether the party to the judgment asserted claims. The amount of time. Can I, is there anything we could put in this opinion that would fix it so that we wouldn't be back here a year from now with a new jurisdictional argument? Like, what does an opinion have to say, in your view? Do we just have to say, and also, if there are any other arguments against jurisdiction, we reject those too? Well, I mean, do you understand? Why isn't this just law of the case, and we try to avoid intra-circuit conflicts, and it's just a little weird to have another panel understanding the two members have stayed the same, but still to have another panel now kind of passing judgment on that first opinion. The first opinion just didn't address the issues, and that's not that uncommon, and law of the case principles this court has held have to give way to article three. Is this the American Canoe case? Well, the American Canoe discusses law of the case, yes. But it says, you know, it's a malleable doctrine, and in that case, where all you're talking about is a district court doing the unremarkable thing of reviewing an interlocutory order that was issued before discovery, before a trial. I mean, this is really different. There has been a trial, there's been a full-blown appeal, and to go back and consider the same question again, I mean, that's unusual. Well, you know, there would be no efficiency here. Glory Wealth wasn't part of the interlocutory appeal, and Glory Wealth has asserted, you know, claims against alter egos. So, you know, it is not as... The interlocutory appeal was very early, and it did address a very narrow issue. And you have a party plaintiff here that wasn't even part of that. So, again, I just think there's... The court has a duty to assess its jurisdiction, and it will be splitting with the... I think that there's an overall problem here, and that is to rule in your favor is for this court to aid and abet what was a very sophisticated scheme of fraudulent conveyances and a shell game to avoid facing up to the clear import of the foreign maritime judgment. I just... It almost... To undo the results of Judge Dumas' trial and what his conclusions he drew from the evidence and the rest to keep this thing going and send fragments of it off in some different direction is to simply encourage evasion of maritime judgments rather than enforcement of them. The question, the bottom-line question for this court is whether we're going to encourage parties to own up to judgments or whether we're going to encourage sophisticated international shell games and fraudulent conveyances to avoid judgments. I'd rather cast my light with enforcing judgments of foreign courts, and I think they'd be grateful that we did so. Thank you. Thank you. Justice Wilkerson, Justice Adjaye, Justice Harris, may it please the Court, my name is William Bennett from Blank, Rome. I represent Claim S.A. I'm going to take 12 minutes of time to discuss the appeal. My colleague James Powers, who represents Gloria Wealth, will have eight minutes to discuss point number three in the appeal. Picking up where Justice Wilkerson left off, Mr. Baranski testified... We're judges, by the way. Judge Wilkerson. Appreciate the promotion, but it's not going to work. It's not a state court. Judge Wilkerson, you are absolutely right. Mr. Baranski testified that the purpose of the whole scheme that he set up was to avoid Rule B, and even during the trial, he had the audacity to sell $100 million worth of assets to his mother for one euro. Peacock is clear. This Court has already discussed Peacock and CF Trust, and it tells us that Peacock is very limited. Peacock does not prohibit a federal court from taking jurisdiction over a post-judgment alter-ego claim where an independent basis for jurisdiction exists. As Judge Adjaye wrote in the interlocutory appeal, going to the questions that was raised by Judge Harris, quote, a claim to enforce a foreign maritime judgment is within the admiralty subject matter jurisdiction of United States courts when the claim underlying the judgment would be an admiralty or maritime claim under federal law, which this was. Defendants would like to ignore two centuries of Supreme Court precedent. And as this Court, again, in starting its interlocutory opinion, it reminds the readers that since the founding, the Supreme Court has made clear the authority and primacy of the federal courts in matters of admiralty, particularly as it relates to the recognition of foreign admiralty jurisdiction and judgments. It is clear that this Court had subject matter jurisdiction. It was never argued below that it wasn't a maritime claim after the interlocutory appeal. Subject matter jurisdiction exists. The case of Swift by the Supreme Court clearly indicates that the Court was well within its rights to hear the alter ego claims. Well, it's simply the law of the case. And, you know, you can raise jurisdictional issues at any time I recognize, but that doesn't eviscerate the law of the case doctrine when the prior Court has decided the jurisdictional issue. Exactly right, and I think Judge Harris had it right. Despite maybe the issue at interlocutory appeal being drafted in a narrow way, after the D'Amico decision was decided, Judge Agee's opinion was broader than that. And it instructed the parties that there was subject matter jurisdiction, it was a maritime claim, it dealt with the enforcement of a foreign judgment that was a maritime claim which our founding fathers wanted parties to have access to our courts to determine that issue. Subject matter jurisdiction was clear. Peacock does not apply. It's a very narrow case. All right, is that your argument? I have no further comments. If the Court has any questions on some of the other points that were raised by counsel in the brief, I'm happy to... Let me ask the panel if they have questions or whether we'll move on. We do have any questions. We have no questions, and we'll be happy to hear from Mr. Powers. Morning, Judge Wilkinson, Judge Harris, Judge Agee. May it please the Court, my name is James Power of the law firm of Holland and Knight for Plaintiff Appellee Glory Wealth Shipping, PTE Limited. I was not part of the interlocutory appeal. However, I did read this Court's decision, and it is clear to me that the Court has decided, it is the law of the case, that there was no issue, that an issue before the Court was whether or not there was a maritime claim that was possessed by flame. Now, regardless of Glory Wealth's position on that issue, that has already been decided by this Court. But what I did not hear, and what seemed lacking that I would like the opportunity to explain to the Court, is Glory Wealth filed an action after flame had hatched the vessel. At the time, we moved to intervene. Judge Dumour, at the time, there was some uncertainty as to the saltiness of the claim. That has since been resolved for flame support. However, there was not one iota of uncertainty as to the saltiness of Glory Wealth's claim. There has not been any argument, there has not been any objections by freight bulk that Glory Wealth's claim is not a maritime claim and did not invoke the admiralty jurisdiction of the Court from day one under 1333. So hence, no one has talked about the fact that Judge Dumour set up two lines of cases. One, that was clearly admiralty jurisdiction of the Court and maritime enough in nature for the Court to proceed in that manner. And one, he was waiting for what the opinions of this Court were. So I think under the questions of what is the subject matter to this Court, I think that Glory Wealth's addition of the case has done nothing but strengthen the Court's admiralty jurisdiction.  There has been some talk that Peacock does not allow in a post-judgment situation bringing in alter egos if they were not materially related to the first claim. What freight bulk has failed to address and Glory Wealth did address is that, at least insofar as Glory Wealth's initial claim, which is Rule B, I think the Court is aware of that, we had not yet had a judgment. So this was clearly of the very nature, which has been part of this country's jurisprudence for over 100 years, of allowing a pre-judgment maritime attachment claim. And as we've seen in Blue Whale under the Second Circuit, these claims for alter ego are determined under the law in which the jurisdiction in which the vessel is attached, and this being it was the United States. So the alter ego was determined by U.S. law, which was appropriate because at that point in time, Glory Wealth, when it attached the vessel, was merely seeking security for its maritime claim. That had progressed to some degree in London and had ultimately resulted later after the findings of alter ego in a ruling in a U.K. judgment. With respect only to Glory Wealth, there was a pending motion before this Court. I know it's not officially on the docket. However, I think it does add some of the points that Frey Bulk has raised, and that is the distribution of funds. If the Court has questions regarding that, we rest on our briefs. If the Court does not have any questions, we do think we outlined quite specifically that the distribution of the funds to Glory Wealth after it obtained a U.K. judgment but before it had it recognized is an issue that has been waived by Frey Bulk by failing to object to the release of the funds for a period of three weeks after a judgment had been issued. Thank you. What do you say about the merits, apart from the waiver issue, about the merits of the argument that the Court was distributing proceeds from the sale of the attached vessel to Glory Wealth even though it hadn't registered its default judgment in the Court for life? Well, there's two things. Is the failure of registration there a fatal defect? Absolutely not. I think the Courts would have, again, but for the fact that it was deprived of assessing how it would handle its equitable jurisdiction and the equitable remedies that are available, that are very powerful that were available to Judge Dumas. Judge Dumas could have chosen. It's clear that Global Wealth had the judgment. It was clear that Glory Wealth had the judgment. Is there any dispute over that? There is not. It's simply the whole dispute is over the registry. That is from what I understand from the paper. At least on appeal. I mean, I understand your waiver argument, but was there any dispute over the equitable nature of the distribution of the proceeds? Well, that was the nature of the distribution of the proceeds seems to be the only objection that was raised at a hearing. However, there was not expanded upon as to the basis upon which the objection. I believe, Mr. Frantz, I have a transcription. Are Flame and Global Wealth disputing the distributions of the sales proceeds? Flame and Glory Wealth are not. We have reached an agreement. This was part of an agreement. Did the two of you all have reached agreement on that? Yes. So whether it went to Glory Wealth or it all went to Flame or we split it up, it doesn't matter. The funds were distributed to two parties that were plaintiffs in the case that had maritime claims, one of which had a judgment at the time it filed its complaint, the other which had. Okay. So let me get this straight. You say first the issue wasn't raised. Then you say there's no question about the fact that Global Wealth had a default judgment. The question was purely over the registration of the judgment and that there's no dispute over the distribution of sales proceeds between Global Wealth and Flame. Yes, there is no dispute between the sales proceeds between Glory Wealth and Flame. There is no dispute that Glory Wealth obtained a U.K. judgment after the trial, after a finding was made that there was alter egos between ICI, the entity against which Glory Wealth obtained a U.K. judgment. It has to be an equitable matter, the distribution of sales proceeds of an attached vessel between two parties. You've got to give the district court an awful lot of discretion on that. It's entrusted to the powers of equity. Absolutely, Your Honor. Absolutely, Your Honor. And that is one of the reasons why Flame and Glory Wealth came to a resolution to avoid unnecessary further litigation before the court, before Judge Dumas. We had recognized, or it was our position, that Judge Dumas had sole equitable authority to apportion the proceeds to two Rule B attaching plaintiffs. You know, there are various arguments which we don't need to get through here, which is why we saved the court. We saved the uncertainty between the both parties of figuring out how to judge. Why would they be concerned about the distribution of proceeds between Flame and Glory Wealth? I mean, what stake do they have in that apportionment? They have absolutely no stake. So why are they complaining? Well, I think simply they're complaining as part of a sort of a Hail Mary request that there is $1.5 million that has gone to Glory Wealth, which under their argument should not have gone to Glory Wealth, because Glory Wealth obtained a U.K. judgment after the trial but had not registered it prior to the release of the funds by Judge Dumas. Now, again, that is where the waiver comes in. I also have a transcript. On September 3, 2014, I advised the court, this is Judge Dumas, I said on its joint appendix, page 2672, Glory Wealth is going to London. We are trying to register the arbitration award in London, and I believe, so I informed everyone knew many, many, many months before Judge Dumas released the funds that Glory Wealth was converting its English arbitration award. Okay, I think I understand. I think you're asking something that also occurred to me. So even if Freight Bulk won on this claim, wouldn't the money that was dispersed, I'm going to get the names wrong, but the money that was dispersed to Glory Wealth, wouldn't it just end up going to Flame anyway? This is what I'm not understanding. What's the relief here? Yes, theoretically that would be the case. I mean, in essence, Flame and Glory Wealth could have agreed to take this issue of Glory Wealth not having a U.K. judgment registered in the United States at the time of the disbursement of funds. Flame and Glory Wealth could have simply agreed, let Flame have all the money so there's no issue because Flame has registered a judgment, which no one's disputing, and then Flame and Glory Wealth could separate it later because that's the agreement between Flame and Glory Wealth because we just simply did not want to further burden the court with issues of equitably apportioning vessel sale proceeds between two attaching plaintiffs. But you've also argued that even without the U.K. judgment in this setting, the arbitration award itself was sufficient. We think that the Admiralty jurisdiction, the comity principles of Admiralty, particularly between the two nations of the United States and Great Britain, who have a long history of Admiralty comity overlapping and looking to the, would give effect. And again, there is no case law suggesting that this couldn't be done, and it would be our position is within the equitable powers of Judge Dumas sitting in Admiralty that he could simply have taken judicial notice of the U.K. arbitration award, which no one was objective, and to this day there was not an objection that the arbitration award was not properly obtained by reason of the agreement of the charter party between Glory Wealth and industrial carriers. And one more point, I had and had. Thank you, sir. I'm sorry. Thank you, sir. Your time has expired. Okay. Thank you. Mr. Franze, we'd like to hear from you in rebuttal. Thank you. I'd like to start with law of the case again, Your Honors. Again, if this court finds that the prior interlocutory appeal resolved this issue, it will be saying that it's splitting with two other circuit courts, the Fifth Circuit and the Eleventh Circuit, on the Peacock issue. And law of the case governs when the issue was decided, and it was not decided here. As far as, you know, it is two different jurisdictional principles. For diversity jurisdiction, you have to have the amount and controversy and complete diversity. You can fail on one of those issues or address one of those issues. It doesn't mean you address the other, and that's the case here. With respect to Flame's discussion of, you know, two centuries of Supreme Court precedent to enforce foreign admiralty judgments, that two centuries involved enforcement against the parties named in the judgment. And, again, they are based in Peacock. You know, this court extended the federal jurisdiction to enforce a judgment against a party to non-parties, and the Supreme Court reversed. And they're asking you to adopt that very principle for admiralty, and it would split with two different jurisdictions. As far as – But these parties are one and the same. I mean, if there ever was a case in which an alter ego analysis was appropriate, this would seem to be it. The commingling of funds is unbelievable. Your Honor, in Peacock, it was the exact same situation. It was a corporation. The party got a judgment against the corporation and alleged that the officer of the corporation should be held liable for the judgment, and the Supreme Court clearly reversed. And, again, here, you know, ICI was a separate corporation from the companies of Mr. Baranski that occurred over several years later. But as far as Glory Wealth, I think there needs to be some clarity on the judgment issue here. This isn't about the amount of the distribution. The issue here is that Glory Wealth came to the district court with a recognized judgment from the Southern District of New York, recognizing their arbitration award. Freight Bulk moved to challenge that, and the district court refused the challenge because it said we were not ICI. Freight Bulk was not ICI, even though Glory Wealth sought to enforce the judgment against Freight Bulk as if it was ICI. And that judgment, on its face, was registered past the limitations period to recognize a foreign arbitration award. And that's what Glory Wealth's counsel was referring to at the trial. At the trial, at the close of their evidence, Freight Bulk said they do not have a valid judgment that they have registered in this court. And Freight Bulk was referring to the New York judgment that hadn't been registered in the Eastern District of Virginia. And Glory Wealth's counsel got up and said, well, we're now getting a U.K. judgment for the same arbitration award we have for the New York judgment, and we will, representative of the court, we will register it at the proper time. And they never did. They are proceeding on a judgment that was never presented to the district court and that has not been recognized to have any force in effect in the United States. But they did present their arbitration award. Yes, but foreign admiralty awards still go through the recognition process, just like Flame did. You get your foreign award, your foreign judgment, recognized in the United States. That's how it has force and effect. And they have not done that. They have no judgment presented to the district court at all at this point. And the one judgment they are now relying on, a U.K. judgment, hasn't been recognized in this country to have any effect. And it matters because it's not about moving the money around. What about their waiver argument? Their waiver argument is equivalent to a plaintiff in a product liability action saying that the defendant needed to remind them to introduce the product into evidence. They're basing jurisdiction on a judgment, and they're trying to enforce a judgment. That judgment has no force and effect in the United States. It's never been recognized. And the district court judge's decision refers to a totally different judgment that they have abandoned. And it matters here because Glory Wealth is using alter ego findings in this case and arguing collateral estoppel in different jurisdictions. So it should be vacated because it has no enforceable judgment. We have no further questions. Thank you.
judges: J. Harvie Wilkinson III, G. Steven Agee, Pamela A. Harris